**RECEIVED**

MAY 0 4 2021

**BY MAIL**

**IN THE**

# United States District Court

**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| Chevalier Howard | § | |
| Complainant, | § | |
| | § | |
| v. | § | |
| | § | |
| NewRez, LLC dba | § | |
| Shellpoint Mortgage Servicing | § | |
| Respondent | § | |
| and | § | To the Honorable Chancellor |
| NewRez, LLC | § | |
| Respondent | § | Case No._____ |
| and | § | |
| FHCMC-NRZ Amerihome 207840 | § | In Exclusive Equity: |
| Respondent | § | |
| and | § | |
| Catherine Dondvilla | § | |
| Respondent. | § | |
| | § | |

## BILL IN EQUITY

COMES NOW Complainant submits this complaint and these matters on special deposit in trust with this Court and seeks exclusive American/English equitable relief for the following: 1) Breach of Contract, 2) Breach of Fiduciary Duty, 3) Fraud in the Factum, 4) Negligent Misrepresentation, 5) Gross Negligence, and 6) Unjust Enrichment. Said causes of action involve a negotiable instrument in the form of a promissory note. Complainant provides the following in support:

Complainant relies on maxims of equity; "A Treatise on Equity Jurisprudence" (1905) by John Norton Pomeroy, hereinafter "Pomeroy"; "A Treatise on Suits in Chancery" (2nd ed. 1907) by Henry R. Gibson, hereinafter "Gibson," §§ 1-64 except where otherwise noted or applicable herein; and other equitable principles and rules. In that regard, Complainant respectfully and humbly reminds the Court of the following:

"*Principia probant non probantur* – Maxims have an inherent probative force, and need not to be proved." *See* Maxims of Equity: Gibson § 64 (30).

"…[maxims] have been worthily and aptly called *legem leges*—the laws of the laws." *See* Maxims of Equity: Gibson § 31.

"…so fundamental are … maxims that he who disputes their authority is regarded as beyond the reach of reason." *See* Maxims of Equity: Gibson § 31 (Footnote 3).

All public officials, including but not limited to, every administrator, executor, judge, court clerk, receiver, sheriff or other public officer entrusted with the property[1] of others are fiduciary trustees to the public. *See* Maxims of Equity: Gibson §§ 46 and 57 (summarized, emphasis added).

"…equity strives to reach the substance and intent of things rather than the form… where there is substance for the Court to act on, the want of form will be disregarded." *See* Maxims of Equity: § 43.

Therefore, equity regards the substance and intent of pleadings, transactions, agreements, contracts, relationships, etc. and not its form or fictions.

## PETITION TO SEAL

Complainant petitions the Court to proceed with these matters as private and sealed, in Chambers or otherwise, without the public, without publication, and without spectators so the public may not be alarmed or harmed by comprehending: 1) the impact of the Trading with the Enemy Act (1917) that was amended by the Emergency Banking Relief Act (1933), which confirmed and approved Presidential Proclamation 2039 on March 6, 1933 and Presidential Proclamation 2040 on March 9, 1933. These acts and proclamations reduced the *rights* of the once sovereign "We The People" to *privileges* of "persons within the United States" who are statutorily defined as enemies, belligerents, and rebels of the incorporated United States of America as stated in the original wording of the Emergency Banking Relief Act, and for such purposes of

---

[1] "…an aggregate of rights which are guaranteed and protected by the government." — Black's Law 5th edition.

"...control[ling] the lives of all American citizens..." as stated in Senate Report No. 93-549

entitled the "Emergency War Powers Statutes." Such diminishing of *rights* to *privileges* has caused

Complainant's pre-1933 civilian due process rights to be not cognizable in courts of law, federal

and state, that are sitting in a temporary emergency war powers jurisdiction; and 2) how lending

institutions create money with little to no risk due to their refusal to comply with Generally

Accepted Accounting Principles (GAAP) and Generally Accepted Auditing Standards (GAAS).

Refusal to follow said principles and standards have the same economic effect similar to stealing,

counterfeiting, and swindling the public. This is the ultimate white-collar crime whereby the victim

(the borrower) does not even realize they are being robbed because the crime has the appearance

of a legal transaction, but it's actually fraud, involving a collusion of professionals, including

legislators and the Certified Public Accountants (CPAs) who certify the lender's accounting.

Therefore, if such is comprehended by the public, it would cause irreparable alarm and/or

harm to the same. Therefore, Complainant petitions this matter to be private and sealed.

## STATEMENT OF JURISDICTION
## EXCLUSIVE AMERICAN / ENGLISH EQUITY

1.      Due to the temporary, but perpetual, emergency war powers jurisdiction,

Complainant seeks a pre-1933 exclusive American/English equitable jurisdiction, which is distinct

and different[2] from the current form of equity (concurrent equity) that was merged into the Federal

Rules of Civil Procedure (1938), authorized by section 17 of the Trading with the Enemy Act

(1917) through section 5(b) of said Act, and later amended by the Emergency Banking Relief Act

(1933). Inherent or exclusive equity is solely based on the principles of good faith, good reason,

and good conscience for the purpose of seeking to perform equal and perfect justice for all i.e. the

---

[2] "...the proceedings of the Court [of Equity/Chancery] were to be kept distinct from those of the Law Court."
*See* Maxims of Equity: Gibson § 10.

rights and duties of all the parties are *fully* determined. Furthermore, it regards substance over form and fiction in *every* ruling. Due to its merger into the Federal Rules of Civil Procedure (1938), the statutory or concurrent equity is mixed and corrupted with local prejudices. It permits the aid of artifices and devices of civil procedure or form to supplant the principles of exclusive equity. *See* Maxims of Equity: Gibson §§ 5 and 79 (1). Although Federal Rules of Civil Procedure is the local practice, courts have unquestionably held that "…the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *See* Davis v. Wechsler, 263 U.S. 22 (1923).

2.      This Court also has diversity jurisdiction. Complainant, in esse, sui juris, is foreign[3] to the incorporated United States of America, while Respondents are "statutory persons" within the incorporated United States of America, in the states of Pennsylvania, Delaware, South Carolina and Virginia.

3.      This Court has jurisdiction over equitable claims supported by the following paragraphs 4 through 11 stated herein.

4.      "The judicial power shall extend to all cases, in law and **equity**, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority; to all cases … between citizens of different states; … and between a state, or the citizens thereof, and foreign states, citizens or subjects." *See* Article 3, § 2, Subdivision 1 of the Constitution for The United States of America, (emphasis added).

---

[3] Belonging, attached, or subject to another jurisdiction. — Black's Law 5th edition. Complainant is a Non-enemy, Non-belligerent, Non-rebel, and Peaceful Inhabitant with constitutionally protected rights that cannot commingle with the constitutionally unprotected privileges and benefits of belligerents, enemies, and rebels per the wording and force of the Emergency Banking Relief Act (1933), which amended the Trading with the Enemy Act (1917). Complainant's pre-1933 citizenship status as it pertains to his contractual obligation(s) to the incorporated United States of America is a matter of public record, duly filed and recorded in Book: 21851 and Page: 1431 in the St. Louis County Recorder of Deeds, and herein incorporated by reference.

5.    "The judicial power of the State, as to matters of law and **equity** … shall be vested in a Supreme Court, the St. Louis Court of Appeals, Circuit Courts, Criminal Courts, Probate Courts, County Courts, and Municipal Corporation Courts." *See* Article 6, § 1 of the 1875 Constitution of the State of Missouri (as ratified without subsequent amendments, emphasis added).

6.    Complainant cites Pomeroy as to the existence of the Chancery Court, and its Exclusive Equity jurisdiction, under American/English jurisprudence:

> "To sum up this result in one brief statement, all equitable estates, interests, and primary rights, and all the principles, doctrines, and rules of the equity jurisprudence by which they are defined, determined, and regulated, remain absolutely untouched, in their full force and extent, as much as though a separate court of chancery were still preserved." *See* Pomeroy § 354 (emphasis added).

> "It is easy to say that the distinctive modes of equity procedure are alone abrogated by the legislature, while the principles, doctrines and rules of the equity jurisprudence and jurisdiction are wholly unaffected." *See* Pomeroy § 355 (emphasis added).

7.    Complainant cites Gibson as to the authority of the Maxims that govern the Chancery Court, and further affirmation of the existence of its Exclusive Equity jurisdiction, under American/English jurisprudence:

> "The Equitable, or Inherent, to include all of those matters, whether purely equitable in their nature or having characteristics both equitable and legal, jurisdiction over which is derived exclusively or chiefly from their inherent powers as Courts of Equity." *See* Maxims of Equity: Gibson § 22.

> "The equitable or inherent jurisdiction of the Chancery Court includes all cases of an equitable nature, …. These cases include the following: 1) All suits resulting from accidents or mistakes, … 3) All suits resulting from trusts, express, constructive, and resulting, … 5) All suits for reformation, re-execution, rescission, and surrender of written instruments, … 8) All suits for the administration and marshaling of assets, …" *See* Maxims of Equity: Gibson § 25 (relevant parts included).

"Courts of Chancery/Equity have exclusive jurisdiction of all matters arising out of trusts of all kinds, express, resulting and constructive." *See* Maxims of Equity: Gibson § 925 (emphasis added).

"Where a Court of Equity has obtained jurisdiction over some portion or feature of a controversy, it may, and will in general, proceed to decide the whole issues, and to award complete relief, although the rights of the parties are strictly legal, and the final remedy granted is of the kind which might be conferred by a Court of law." *See* Maxims of Equity: Gibson § 36 (emphasis added).

8.     "The Court held that federal courts have the equity jurisdiction that was exercised by the English Court of Chancery 'at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789… [quoting 1928 Rules] …. The Court further noted that regardless of the merger of the formerly separate courts of law and equity by the Federal Rules of Civil Procedure, 'the substantive principles of Courts of Chancery remain unaffected'…. Some of the earliest writings on the equity jurisdiction of English courts emphasize the exclusive role of the equity courts over suits arising out of a breach of a fiduciary duty." *See Newby v. Enron* (2002), (emphasis added).

9.     "The jurisprudence of Equity, and its pleadings and practice prevail in *all* the States of the Union; and in many of the States have completely supplanted the pleadings and practice of the common law. There is an opinion, somewhat prevalent, that there is no Equity jurisprudence in those States of the Union which have abolished Chancery Courts. This is a gross misconception. The doctrines, principles and remedies of the Chancery Court are in full force in every State; and while, in many of the States, there are no separate Chancery Courts, in all of them the jurisprudence of Equity is, nevertheless, recognized and administered as fully as though special courts of Equity were in existence, …. And so, although in many of the States there are no separate Chancery Courts, yet in those very States the pleadings, practice and principles of Chancery are prevalent, and well-nigh supreme, although to some extent under new names. And in the Federal Courts the principles, pleading and practice of Equity remain wholly unimpaired." *See* Maxims of Equity:

Gibson § 15 (emphasis added).

10.     "By [the constitution] the Chancery Courts are made Constitutional Courts, and thus put beyond the reach of the Legislature." *See* Maxims of Equity: Gibson § 13.

11.     Therefore, Complainant is completely within his full right to bring this suit before the Honorable Chancellor (or one who acts as Chancellor even if there exists no physical Chancery division or building), and hereby grants in personam personal and subject matter jurisdiction to a Chancery Court authorized under Article 3, § 2, Subdivision 1 of the Constitution for The United States of America pursuant to the Judiciary Act of 1873 (as amended in 1875) where "generally in all matters in which there is a conflict or variance, between the rules of Equity and the rules of the common law with reference to the same subject matter, the rules of Equity shall prevail,...." *See* Maxims of Equity: Gibson § 9. Only a Federal District Court with an Article 3 Chancellor or a *de* jure Missouri State Court with an Article 6 Chancellor, sitting in an exclusive American/English equitable jurisdiction, in Chambers, under rules of American/English Equity, in a suit that is sealed and private, to the exclusion of the public "enemies," can grant the equitable relief sought by Complainant.

12.     Complainant invokes an exclusive American/English equitable jurisdiction of this Court and submits these matters on special deposit in trust, whereby Complainant could receive both actual and exemplary damages as well as equitable remedies.

## STATEMENT OF FACTS

13.     Complainant incorporates herein Complainant's allegations contained in paragraphs 1 through 12 as though fully set forth herein.

14.     Complainant reserves the right to Amend or Supplement this Complaint upon discovery of further facts and/or evidence.

## ~ THE PARTIES ~

15.     Complainant privately resides and privately domiciles within a non-military occupied private estate, without the incorporated United States; and is the alleged Borrower on the promissory note.

16.     Neighbors Credit Union, formerly known as St. Louis Postal Credit Union, a Missouri Not-For-Profit Corporation, hereinafter "Original Creditor," located in St. Louis, Missouri. Original Creditor engages in providing "loans" and other general banking services to the public.

17.     NewRez, LLC, a foreign Missouri Limited Liability Company, hereinafter "Servicer" and/or "Respondents," located in Dover, Delaware. Servicer engages in the servicing of "loans" secured by residential real property and debt collection activities.

18.     NewRez, LLC dba Shellpoint Mortgage Servicing, a Missouri Fictitious Name, hereinafter "Servicer" and/or "Respondents," located in Plymouth Meeting, Pennsylvania. Servicer engages in the servicing of "loans" secured by residential real property and debt collection activities.

19.     FHCMC-NRZ Amerihome 207840, an entity believed to be a trust, hereinafter "Holder" and/or "Respondents," located in McLean, Virginia. On information and belief, Holder engages in investing in mortgage back securities, collateralized debt obligations, and/or asset-back securities.

20.     Catherine Dondvilla, a natural person, hereinafter "Respondents," located in Greenville, South Carolina. Catherine Dondvilla is responsible for all financial activities of NewRez, LLC.

## ~ BACKGROUND ~

21.     On or about April 2004, by mistake, error, and accident, Complainant entered into a mortgage loan agreement with Original Creditor and tendered a financial asset in the amount of $103,500 .

22.     Since April 2004, said financial asset has been transferred to, at least, five different loan servicers: CUNA, PHH Mortgage, NewRez, LLC, and Shellpoint Mortgage Servicing. Although not verified, the financial asset currently appears to be somehow linked to the Respondents.

23.     On or about February 2020, Complainant began consulting with his CPA and researching bank lending practices. Notably, Complainant researched the accounting requirements and standards of lending institutions—GAAP and GAAS; how they should treat the deposit of promissory notes; and various federal reserve publications that explain how money is created, how lending institutions do not lend depositor's funds, and depositing a promissory note is no different than depositing cash or checks. Complainant discovered the following regarding such practices as it relates to lenders providing "loans" to the public:

1.  Lenders involved in the loan transaction never lend one cent to the borrower as adequate consideration to purchase the borrower's promissory note.

2.  Lenders know they are acting as a form of money changers and that an exchange is not a loan.

3.  According to GAAP, the lender records the promissory note as a bank asset offset by a bank liability.

4.  The promissory note is recorded as a bank asset in exchange for credits in the borrower's transaction account or to give value to a check or similar instrument.

5.  The matching principle in GAAP requires that there be a matching liability offsetting the promissory note recorded as an asset and that the liability shows the lender owes the borrower money for the promissory note that is lent to the lender.

6. The promissory note is not deposited in a similar manner as cash is deposited into a checking account when it should be the same.

7. Depositing cash or a promissory note into a checking account or a transaction account is the same or similar to loaning the lender the cash or promissory note.

8. According to GAAP, the promissory note is deposited as a bank asset offset by a bank liability with the bank liability showing the lender owes the borrower money for the promissory note received from the borrower and deposited by the lender.

9. When the lender deposits the promissory note and credits the borrower's transaction account, the lender records a loan made to the borrower. Instead, depositing the promissory note and crediting the borrower's transaction account makes the *borrower* the true lender and the *lender* the true borrower.

10. The lender returns the equivalent in equal value of the loan to the borrower, the true lender per GAAP. When the money is repaid to the borrower, the true lender per GAAP, the lender claims the repaid money is a loan to the borrower and ignores the bookkeeping entries. However, the bookkeeping entries will prove the money trail of who actually lent what to whom.

11. The lender is using a promissory note to claim they lent money to the borrower, but GAAP shows the opposite occurred.

12. Lenders claim they have loan papers with the borrower's name as evidence of a debt. However, the bookkeeping entries show the opposite—the *borrower* was the true lender and the *lender* was the true borrower.

13. The lender does the opposite of what the borrower understands and believes what is to happen, creating an economic effect similar to stealing, counterfeiting, and swindling that damages the borrower.

14. As a result, the cost and risk of the loan transaction unfairly favors the lender.

To summarize, the heart of this dispute is that the Complainant funded his own "loan," via the promissory note that was treated as a financial asset. Therefore, Respondents want to collect principal and interest payments on a "loan" the Original Creditor never lent. This material fact was never disclosed in the loan agreement (promissory note) or authorized by the Complainant. Thereby, Complainant mistakenly, erroneously, and accidentally gave the Original Creditor a

financial asset and is continuing to suffer significant damages as a result.

When banks choose to treat an instrument (promissory note) as a draft, 1) they cannot simultaneously treat the same as a note, and 2) GAAP requires the bank's bookkeeping entries to be the same as when a bank customer deposits a check—a liability owed to the bank customer, not a loan owed to the bank. Therefore, when the Original Creditor treated the promissory note as a draft, the promissory note immediately became a financial asset and an investment contract[4] that favors the Complainant, not the Original Creditor. Consequently, the Original Creditor stole[5] the Complainant's financial asset. Thus, the Original Creditor and each transferee thereafter are imposters, fictitious payees, and the Holder is not the true Holder or Holder in Due Course of the financial asset.

Notably, banks mistakenly claim that a bank liability is money. Pursuant to GAAP and GAAS, it is without controversy that money is an asset. Therefore, it is impossible for money to be both a liability and asset. To imply or directly state such is an admission to making false statements, false representation, false pretense, fraudulent concealment, and fraudulent conversion just to name a few. Furthermore, banks erroneously argue they have an alleged loan agreement with the borrower's signature on it and/or that the borrower received a check from the bank. However, "equity looks to the intent rather than to the form," "equity regards that as done which in good conscience ought to have been done," and "equity imputes an intention to fulfill an obligation." *See* Maxims of Equity: Gibson § 43. More specifically, 1) A signature is "the act of putting one's name at the end of an instrument to attest its validity." *See* Black's Law 5th edition (emphasis added). Any "signature"

---

[4] An investment contract is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party.... To fall within scope of the federal securities acts an 'investment contract' must involve three elements: (1) an investment of money, (2) in a common enterprise, and (3) an expectation of profits solely from the efforts of others." — Black's Law 5th edition.

[5] An instrument is payable to the person intended by the signer. Although Original Creditor knew exactly what was happening, Complainant never intended the instrument to be treated as a draft made payable to the Original Creditor.

of the borrower attests to the validity of a note (a promise to pay), not a draft (an order to pay). The former is a loan and what the borrower believes is happening. The latter is a check, financial asset, and an investment contract that represents what is really happening, which is something not disclosed to the borrower in the loan agreement (promissory note). In that regard, there is no bonafide signature when transactions or agreements are contrived due to inequitable means, 2) the source of the funds comes from the borrower who funds the check or similar instrument for the "loan"; thus, the bank provides no consideration for the financial asset, 3) the bank returns the value of borrower's financial asset to the borrower in the form of a "loan," 4) the bank does not operate with clean hands, 5) the borrower is unaware of what is happening, and 6) the borrower never agrees to any of the aforementioned. Besides, it is without good reason, good conscience, and good faith to think anyone would agree to such an arrangement with full disclosure, honesty, and having clear expression of the loan agreement. "Equity enforces what good reason and good conscience require." *See* Maxims of Equity: Gibson § 58.

24.    Complainant would like to inform the Court that he is willing to satisfy the debt, if any, in full, once Respondents provide adequate assurance of due performance by proving that the Original Creditor has performed according to the loan agreement primarily as follows: 1) the Original Creditor used their own money or depositor's money to purchase the promissory note, 2) the Original Creditor did not accept the promissory note as money or like money to fund the check or similar instrument that then was lent to the Complainant. Such would have an economic effect similar to stealing, counterfeiting, and swindling, 3) the Original Creditor has followed GAAP concerning the loan, and 4) the Complainant agreed to the aforementioned.

25.    On September 17, 2020, Respondents sent a correspondence entitled "Validation of Debt Notice," which appears to be a document similar to an invoice or billing statement. This

correspondence stated, it would validate and verify the debt with the name and address of the Original Creditor upon dispute by the Complainant.

26.     On October 14, 2020, Complainant made his first attempt to receive validation and verification of the debt. *See* Exhibit A. Complainant also enclosed a "Notarized Affidavit of Truth" as a notice of trust between the parties with the loan account and all attachments therefrom being granted as trust property. *See* Exhibit B, paragraphs 21 through 28.

27.     On October 24, 2020, Complainant receives a mortgage statement, which appears to be nothing more than a billing statement. *See* Exhibit C. Respondents did not validate or verify the debt.

28.     On November 14, 2020, Complainant made his second attempt to receive validation and verification of the debt by requesting documentary evidence. *See* Exhibit E. Complainant further stated that "...a billing statement does not offer any verification or proof to any of the requested information...." Proper verification is performed by oath or affidavit.

29.     On or about November 18, 2020, Complainant receives a mortgage statement. Respondents did not validate or verify the debt.

30.     On or about December 18, 2020, Complainant receives a mortgage statement. Respondents did not validate or verify the debt. This continues every month without validation and verification by Respondents.

31.     On December 28, 2020, Complainant made his third attempt to receive validation and verification of the debt by responding with a "Notice and Demand for Full Disclosure." *See* Exhibit G. Complainant also enclosed the following: 1) a "Notice of Trust and Entitlement Order" for the purpose of notifying Respondents, a second time, that trust exists between the parties as well as to provide entitlement orders regarding the financial asset that was lent to the Original

Creditor, *see* Exhibit I, 2) an "Affidavit of Alleged Borrower" that details Complainant's understanding of the loan agreement at the time of the transaction, *see* Exhibit H, and 3) an "Affidavit of Lender" that details the statements Respondents are relying upon to support their claims, which are the Original Creditor provided a loan to the Complainant. S*ee* Exhibit J. However, Respondents refuse to sign and return said affidavit.

32.     On or around the beginning of January 2021, Complainant receives a notice of default from Respondents. Respondents did not validate or verify the debt.

33.     On January 15, 2021, Complainant made his fourth attempt to receive validation and verification of the debt by responding with a "Notice of Default" with an opportunity to cure default. *See* Exhibit M. Once again, Complainant enclosed the following: 1) a "Notice of Trust and Entitlement Order" for the purpose of notifying Respondents, a third time, that trust exists between the parties as well as to provide entitlement orders regarding the financial asset that was lent to the Original Creditor, *see* Exhibit O, and 2) an "Affidavit of Lender" that details the statements Respondents are relying upon to support their claims, which are the Original Creditor provided a loan to the Complainant, *See* Exhibit P. However, for a second time, Respondents refuse to sign and return said affidavit. Complainant also enclosed a billing statement, detailing proceeds for claims, defenses, and recoupment regarding the financial asset that was lent to the Original Creditor as well as other violations. *See* Exhibit N. The billing statement shall be adjusted upon receipt of a full certified accounting.

34.     On February 8, 2021, Complainant sent the following documents and notices to Respondents: "Entitlement Order," which provides Respondents with instructions regarding how to handle Complainant's financial asset, *see* Exhibit R; "Notice of Revocation of Power of Attorney," which rescinds any expressed or implied Power of Attorney rights assigned to

Respondents by mistake, error, and accident, see Exhibit T; and "Notice of Revocation of Signatures," which rescinds any and all signatures used to validate or make effective any document used by Respondents to support Respondent's claim(s) that Complainant received a loan from the Original Creditor, *see* Exhibit S. "When a written instrument, such as a note of hand, bond, deed or mortgage, has been obtained by fraud, force, or duress, or is based on an illegal or immoral consideration, or has been paid or otherwise discharged, but is retained by the payee, on application by the maker of such instrument and the proof of such facts, the Chancery Court will rescind and cancel the same, and require the defendant to deliver it up, and will enjoin him from setting up any claim under it, or in any way attempting to enforce it, and if he has instituted any legal proceedings on such instrument will enjoin them." *See* Maxims of Equity: Gibson § 947.

35.     On or about February 22, 2021, Complainant receives several correspondences from Respondents. Said correspondences include contact information for the alleged Holder of the financial asset, an alleged loan history statement, an assignment verification report, and various other documents. However, none of the documents purports, let alone, proves adequate assurance of due performance by proving that the Original Creditor has performed according to the loan agreement primarily as follows: 1) the Original Creditor used their own money or depositor's money to purchase the promissory note, 2) the Original Creditor did not accept the promissory note as money or like money to fund the check or similar instrument that then was lent to the Complainant, 3) the Original Creditor has followed GAAP concerning the loan, and 4) the Complainant agreed to the aforementioned.

36.     Respondents took Complainant's financial asset(s) subject to all claims and defenses Complainant could assert against the Original Creditor; and the Holder is not the true Holder or Holder in Due Course because the same acquired said instrument from assignors or

previous purchasers who are not *bonafide* purchasers.

> "...Not only must there be a valuable consideration in fact, but it must be paid before notice of the prior claim. Notice after the agreement for the purchase is made, but before any payment [of consideration from the Original Creditor], will destroy the character of bona fide purchaser." *See* Maxims of Equity: Gibson § 75 (emphasis added).

> "A party taking an estate or interest with notice of another's equity therein, takes subject to that equity; that is, the purchaser of an estate or interest, legal or equitable, even for a valuable consideration, with notice of any existing equitable estate, interest, claim or right, in or to the same subject-matter, held by a third person, is liable in Equity to the same extent, and in the same manner, as the person from whom he made the purchase." *See* Maxims of Equity: Gibson § 73 (3)(3) (emphasis added).

> "No one can transfer to another a greater right to a thing than he himself possesses; and no one can, in reason and conscience, expect to acquire a greater right than the vendor could rightfully sell. He who buys with notice of another's rights is bound in good conscience to hold what he buys, subject to those rights, for otherwise he would be taking advantage of his own wrong, and would be enriching himself at another's expense, neither of which acts is permitted by a Court of Conscience" *See* Maxims of Equity: Gibson § 65 (emphasis added).

> "So, Equity will declare a person who has knowingly acquired trust property, a trustee; and will make property purchased in his own name by a fiduciary with trust funds, trust property; ... will, by injunction, protect a party in his rights, or restrain a party in his wrongs." *See* Maxims of Equity: Gibson § 34 (emphasis added).

> "Qui in jus dominiumve alterius succeedit litre ejus utl debet – He who takes the place of another as to any right or property holds it subject to all the rights of the assignor." *See* Maxims of Equity: Gibson § 64 (Footnote 10, emphasis added).

Therefore, title to property does not pass when fraud, misrepresentation, or other inequitable means is involved. "...it is the passing of a consideration and not the form of the contract that in Equity passes title and whatever the form of the transaction, if no consideration passes, in Equity no title passes." *See* Maxims of Equity: Gibson § 43 (emphasis added).

37.   Complainant has made many good-faith attempts to resolve this matter prior to requesting the Court to intervene. Unfortunately, Respondents refuse to comply.

## COUNT I - BREACH OF CONTRACT

38.     Complainant incorporates herein Complainant's allegations contained in paragraphs 1 through 37 as though fully set forth herein.

39.     The promissory note was entered between Complainant and Original Creditor. The purpose of the promissory note was to obtain a loan from the Original Creditor. This entails the following: 1) the intent of the loan agreement (promissory note) is that the original party who funded the loan per the bookkeeping entries is to be repaid the money, 2) the Original Creditor would follow GAAP, 3) the Original Creditor would purchase the promissory note from the Complainant, 4) the Complainant doesn't provide any money, money equivalent, credit, funds, capital, or anything of value that the Original Creditor would use to give value to a check or similar instrument, 5) the Complainant is to repay the loan in the same specie of money or credit that the Original Creditor used to fund the loan per GAAP, 6) there would be no alterations or additions made to the promissory note, 7) the written loan agreement gives full disclosure of all material facts, and 8) the Complainant agrees to the aforementioned.

40.     On information and belief, the Holder is the alleged Holder of the financial asset and Servicer is enforcing the alleged promissory note on behalf of the Holder.

41.     Respondents are subject to any claims and defenses that the Complainant can assert against the seller (Original Creditor) of goods and services as abovementioned in paragraph 36. Therefore, Holder is just as liable as the original party (Original Creditor).

42.     Having established the presence of a contract, Complainant asserts that Original Creditor breached the contract by failing to provide consideration.

> "No one is presumed to give something for nothing, and no one can in reason and conscience expect to receive something for nothing. Whenever a person parts with a consideration he is presumed to intend to acquire whatever that consideration pays for; and he who acquires the legal title to property for which another's money has

paid, is bound in reason and conscience to hold it subject to the orders of the person whose money went into it... Hence, it is the passing of a consideration and not the form of the contract that in Equity passes title and whatever the form of the transaction, if no consideration passes, in Equity no title passes." *See* Maxims of Equity: Gibson § 43.

"As men live by their labor and property, no man is presumed to part with either without receiving or expecting an equivalent in value. Hence, whenever one person has obtained either the labor or property of another he should pay or account therefor, unless he can prove it was a gift." Maxims of Equity: Gibson § 56.

"Cuicvnque aliquis quid concedit concedere videtur et id sine quo res ipsa esse non potuit – Whoever transfers anything to another is deemed to transfer that without which the transfer would be void." *See* Maxims of Equity: Gibson § 65 (Footnote 4).

"A valuable consideration means, and necessarily requires, under every form and kind of purchase, <u>something of actual value</u>, capable, in the estimation of the law, of pecuniary measurement, <u>such as parting with money or money's worth, or an actual change of the purchaser's legal position for the worse</u>...Not only must there be a valuable consideration in fact, but it must be paid before notice of the prior claim. <u>Notice after the agreement for the purchase is made, but before any payment [of consideration from the Original Creditor], will destroy the character of *bona fide* purchaser</u>." *See* Maxims of Equity: Gibson § 75 (emphasis added).

The Original Creditor received the financial asset for free, which makes Original Creditor and all transferees and assignees, including Respondents, mere volunteers. "Equity will not aid a volunteer." *See* Maxims of Equity. There was no *consensus ad idem*. The Original Creditor treated the instrument as a draft (check) AND a note (loan). However, they can only treat the instrument as a note, not both.

43.     When the Original Creditor treated the promissory note as a draft, which is the same as a check, the transaction changed from being a loan (to the Complainant) to an investment contract (between the Complainant, the Original Creditor and all transferees and assignees, including Respondents) in favor of the Complainant. In other words, Respondents owe damages to the Complainant, instead of Complainant owing the Respondents. The Original Creditor is required to record promissory notes, that are treated like drafts (checks), in the same manner as

depositing a check from a bank customer. The bookkeeping entries should show a liability owing the bank customer and not a loan owed by the bank customer. Consequently, the Original Creditor did not follow GAAP when it comes to the proper treatment for depositing the promissory note.

44.     The Original Creditor did not fulfill the intent and purpose of the loan agreement: 1) the original party who funded the loan per the bookkeeping entries will not be repaid, 2) the Original Creditor did not follow GAAP, 3) the Original Creditor did not purchase the promissory note from the Complainant, 4) the Complainant did provide money, money equivalent, credit, funds, capital, or something of value that the Original Creditor used to give value to a check or similar instrument, 5) the Complainant cannot repay the loan in the same specie of money or credit that the Original Creditor used to fund the loan per GAAP, which violates equal protection under the law, 6) the Original Creditor or written loan agreement did not provide full disclosure of all material facts:

> "Suppressio veri suggestio falsi - The suppression of a truth is equivalent to the suggestion of a falsehood." *See* Maxims of Equity: Gibson § 64 (39).

> Every person who has business dealings with another has the right to expect that he will, in every matter connected with such dealings, do whatever good reason and good conscience require. Indeed, each party to a business transaction, before entering upon any negotiations relative thereto, impliedly contracts with the other or others that, in making and performing his engagements honesty, frankness and fidelity will characterize his conduct.

> In consequence of the mutual consciousness of this implied obligation, neither party to an express contract, ordinarily, deems it necessary to inquire of the others, whether such is the understanding.... This implied contract not only precedes and enters into every express contract, but every express contract is impliedly conditioned upon its faithful performance.

> If this fundamental antecedent implied contract is analyzed it will be found to contain the following elements:
> i)     Neither party will make to the other any material representations concerning the subject-matter of the contract that are not true.
> ii)    Neither party will conceal from the other anything, within his knowledge, material to the subject-matter of the contract, that the other party ought to

know, and cannot easily ascertain by himself.

iii)  Neither party has done, nor will do, anything to hinder, delay or defeat a faithful compliance with the contract on his part.

iv)  If one of the parties has trust or confidence specially reposed in him by the other, or has special power or influence over the person or property of the other, he will not avail himself of these advantages to the other's detriment.

v)  The express contract when finally agreed on, if to be reduced to writing, shall be so worded as to express the real meaning of the contract; and shall be so executed, as to formalities, as to make the contract obligatory, and enforceable in Court.

vi)  If the contract has been reduced to writing, and by accident or mistake, fails to express correctly the contract really made, at the request of the party injured the other party will consent so to reform the writing as to make it conform to the contract.

vii)  After the contract has been consummated, each party will, in good faith, do all that the contract requires of him.

viii)  Neither party will take advantage of any material mistake by the other concerning the subject-matter of the contract, or his rights or duties relative thereto, such mistake having materially influenced his consent to the contract, and not being the result of any negligence or bad faith on his part.

ix)  Neither party will insist upon the other doing anything not fairly required of him by the contract.

x)  If the contract is in writing and should be lost or destroyed, it will be re-executed, if required by either party having an existing interest in it.

xi)  If the performance of the contract is, or becomes, impossible by reason of its very nature, or of something wholly uncontemplated by either, or wholly beyond the power of the performer to provide against, then performance, so far as impossible, is to be excused.

    ...

xii)  If any of the implied conditions precedent are violated, the party thereby injured shall have the right to rescind the contract; and that

xiii)  If any of the implied conditions subsequent are violated, the party thereby injured will be compensated and made whole by the other.

...all of such violations are redressible in the Chancery Court. *See* Maxims of Equity: Gibson § 932.

7) the Original Creditor forged the promissory note by altering (or adding) to it when the same was indorsed for purposes of securitizing it, and 8) the Complainant never agreed to any of the aforementioned.

45.     The Original Creditor failed to give full disclosure as it relates to the loan agreement. Accordingly, Respondents "inherit" the liabilities of the Original Creditor as

abovementioned in paragraph 36. Therefore, Complainant has a right to request adequate assurance of due performance from Respondents. However, Respondents refuse to provide adequate assurance of due performance by withholding discovery items and things that would prove whether or not the Original Creditor adhered to the intent and purpose of the loan agreement (promissory note). The Complainant cannot mutually understand or agree to the terms and conditions of the loan agreement if there's no clear expression of its terms and conditions.

46.     As a direct and proximate result of each of the above-referenced breaches, Complainant has suffered and will continue to suffer significant damages.

47.     Consequential and incidental to the said breach and/or violation, Complainant suffered a loss equal to the value of the financial asset plus monthly payments and all proceeds generated from the securitized financial asset. Notably, Complainant's financial asset was stolen, cashed, and then returned to the Complainant in the form of a "loan."

48.     Furthermore, the cost and risk of the transaction drastically changes in favor of the Original Creditor and all transferees and assignees, including Respondents. In accordance with GAAP, the Original Creditor is required to record bookkeeping entries that show the Complainant lent money to the Original Creditor, not the other way around. Not only does the Complainant lose the value of the financial asset, monthly payments and all proceeds generated from the securitized financial asset, Complainant also bears the risk of losing the real property collateral if Complainant is unable to repay the "loan."

49.     Among other things, Complainant is entitled to any applicable equitable remedy, and compensation for the emotional and financial losses and distress caused by Respondents' breaches.

## COUNT II - BREACH OF FIDUCIARY DUTY

50.     Complainant incorporates herein Complainant's allegations contained in paragraphs 1 through 49 as though fully set forth herein.

51.     A constructive trust, by operation of law and equity, governs all property transfers where title to property is obtained by fraud, duress, without consideration, or other inequitable means. "Constructive trusts are so called because they are constructed by Courts of Equity in order to satisfy the demands of justice, without reference to any presumable intention of the parties; they include cases: 1, <u>Where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; or, 2, Where title to property is obtained by fraud, duress, or other inequitable means; or, 3, Where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; or, 4, Where a person acquires property with notice that another is entitled to its benefits.</u> In all such cases, <u>Equity, for the purpose of doing justice in the most efficient manner, constructs a trust out of the transaction, and makes a trustee out of the person thus acquiring the title.</u>" *See* Maxims of Equity: Gibson § 931 (emphasis added). Said constructive trust appoints the party who has a fiduciary duty to another as the trustee, and the party who expressly or impliedly confides or trusts his property, business, or affairs to another as the beneficiary. "The term trustee includes both trustees and quasi-trustees, and the term beneficiary denotes and includes everyone who expressly or impliedly confides or trusts his property, business or affairs, to another, and every one for whose benefit an express or implied trust arises, or a constructive fraud can be declared." See Maxims of Equity: Gibson § 46.

52.     In addition to the constructive trust, Complainant expressed trust over the property (the financial asset, including all assets therefrom) via a "Notice of Trust" as an expressed, explicit,

and actual notice of trust between the parties. *See* Exhibits B (paragraphs 21 to 28), I, and O.

53.     By operation of law and equity, Respondents are Fiduciary Trustee(s) and Complainant is Settlor/Beneficiary of the property, which is the "loan" account and all assets therefrom. "But in Equity, … the beneficiary is regarded as the real owner; and the trustee is considered as a mere manager of the trust property for the benefit of the beneficiary, and liable to the beneficiary for any and every breach of the trust. If the trustee fails to do his duty, the Chancery Court will remove him, on proper application…. Thus every administrator, executor, and guardian, and, to a less extent, every Court Clerk, Receiver, Sheriff, County Trustee or other public officer entrusted with the money of others, by the law, and especially where he has given bond to secure those entitled, is liable to be called by the beneficiaries to account in Chancery; and, in all such cases, the Court regards the beneficiary as the real owner of the property, although the legal title is in the officer having it in possession." *See* Maxims of Equity: Gibson § 57.

54.     A fiduciary's obligations include a duty of loyalty, a duty to exercise reasonable care and skill, a duty to deal impartially with beneficiaries; and a duty of "utmost good faith."

55.     Also, the beneficiary (Complainant) has the right to a full accounting regarding the trust property as well as to issue instructions regarding what should be done with said property.

56.     On October 14, 2020, December 28, 2020, and January 15, 2021, Complainant provides notice of trust and demands performance of trust. Complainant requested Respondents to provide a full accounting, disburse the assets for the benefit of the beneficiary (Complainant), settle and close all accounts, release and reconvey the collateral, pay any and all outstanding taxes, etc. *See* Exhibits B (paragraphs 21 to 28), I, and O.

57.     An entitlement order was also issued with the same instructions. *See* Exhibit R. However, Respondents refuse to comply with Complainant's entitlement order.

58. Respondents have not complied with Complainant's demand for performance of trust.

59. Therefore, Respondents have breached the duty of loyalty; utmost good faith; and duty to exercise reasonable care and skill.

60. Complainant has been damaged due to said breach of fiduciary duty. Respondents have directly or indirectly acquired some personal interest or title in or to trust property and is profiting from such proceeds and profits out of the trust whereby said proceeds and profits rightfully belong to Complainant.

> "So, Equity will declare a person who has knowingly acquired trust property, a trustee; and will make property purchased in his own name by a fiduciary with trust funds, trust property; ... will, by injunction, protect a party in his rights, or restrain a party in his wrongs." *See* Maxims of Equity: Gibson § 34 (emphasis added).

> "Courts of Equity lay it down as a rule, without exception, that no trustee shall in any case, or under any circumstances, directly or indirectly, acquire any personal interest or title in or to the trust property, or its proceeds, or make any personal profits out of the trust, or by means of his trust character, without the full consent of the beneficiary." *See* Maxims of Equity: Gibson § 46.

> "When a person in a fiduciary position, acting apparently within the scope of his powers (that is, having authority to do what he does), purchases lands, or personal property, with trust funds, and takes the title to such property in his own name, even without any declaration of a trust, a trust with respect to such property at once results in favor of the beneficiary of said funds, and the purchaser becomes with respect to such property, a trustee. A Court of Equity assumes that the purchaser intended to do his fiduciary duty." *See* Maxims of Equity: Gibson § 44.

61. Among other things, Complainant is entitled to any applicable equitable remedy, including accounts, and compensation for the emotional and financial losses and distress caused by Respondents' breaches.

### COUNT III – FRAUD IN THE FACTUM

62. Complainant incorporates herein Complainant's allegations contained in paragraphs 1 through 61 as though fully set forth herein.

63.     Original Creditor deliberately concealed or failed to disclose existing facts. Original Creditor is duty bound to disclose all facts related to the agreement as abovementioned in paragraph 44 (*See* Maxims of Equity: Gibson § 932). Notably, Complainant should have been informed of the conversion of his promissory note to a financial asset by the Original Creditor.

64.     Due to the widely-accepted *prima facie* evidence and/or information concerning lending practices, as abovementioned in paragraph 23 and throughout, Original Creditor had knowledge or notice of an adverse claim to the instrument at closing of escrow. Notably, Original Creditor, and all transferees and assignees, including Respondents have "…knowledge or information of facts, which were sufficient to put a prudent man upon inquiry, and which were of such a nature that the inquiry, if prosecuted with reasonable diligence, would certainly have led to a discovery of the conflicting claim…." *See* Maxim of Equity: Gibson § 76 (2). Furthermore, Respondents knew or ought to have known that the Original Creditor(s) transferred the financial asset or interest in a transaction that was in breach of duty. Accordingly, Respondents have notice of an adverse claim.

65.     The misrepresentation committed by Respondents were of a material fact. Respondents misrepresented that the transaction was still the initial agreement entered between Complainant and the Original Creditor.

66.     Respondents made the representation to the Complainant with the intention of procuring a contract. For instance, since Respondents became somehow involved with the promissory note, Respondents have sent, and continue to send, numerous of correspondences that perpetuates the misrepresentations of material facts. *See* Exhibits C, V, W, X, Y, Z, AA, BB, and CC, which only shows a few of the written misrepresentations.

67.     Complainant has been making payments on the mortgage, pursuant to the initial

agreement. He was oblivious of the goings-on.

68.    Complainant suffered damage as a result of that reliance, until he decided to pursue the matter via the correspondences mentioned hereinabove. Notably, due to his mistaken reliance, error, and/or accident: 1) a financial asset was stolen, 2) monthly payments in an amount greater than the face value of the financial asset was lost due to extortion (the threat of foreclosure), 3) proceeds from the securitized financial asset are being stolen, 4) the Original Creditor and all transferees and assignees, including Respondents, are being unjustly enriched, and 5) real property collateral is at risk. If that's not enough, all of this is occurring without anything of value from the Original Creditor. In other words, the Original Creditor has not lent one cent.

69.    Among other things, Complainant is entitled to remedies for material misrepresentation or fraud, and any other remedy applicable under law and/or equity.

## COUNT IV - NEGLIGENT MISREPRESENTATION

70.    Complainant incorporates herein Complainant's allegations contained in paragraphs 1 through 69 as though fully set forth herein.

71.    Respondents committed misrepresentation by conduct. Notably, Respondents deliberately concealed or failed to disclose existing facts. Respondents are duty bound to disclose all facts related to the agreement.

72.    Complainant should have been informed of the conversion, among other things, of his promissory note to a financial asset from the Original Creditor and all transferees and assignees, including Respondents.

73.    Respondents knew or ought to have established the existence of an adverse claim as abovementioned in paragraph 64.

74.    The misrepresentation committed by Respondents were of a material fact.

Respondents misrepresented that the transaction was still the initial agreement entered between Complainant and the Original Creditor.

75.     Respondents made the representation to the Complainant with the intention of procuring a contract as abovementioned in paragraph 66.

76.     Had Complainant known the promissory note had been converted to a financial asset, he would have never entered into such an unconscionable agreement. Complainant would have, at least, negotiated a transaction fee with the Original Creditor for the same being a money exchanger and not an institution that provides loans.

77.     Complainant has been making payments on the mortgage to the Respondents. He was oblivious of the goings-on.

78.     Complainant suffered damage as a result of that reliance as abovementioned in paragraph 68.

79.     Among other things, Complainant is entitled to remedies applicable under law and/or equity.

### COUNT V – GROSS NEGLIGENCE

80.     Complainant incorporates herein Complainant's allegations contained in paragraphs 1 through 79 as though fully set forth herein.

81.     Respondents owes a duty to the Complainant. *See* Count I and II above.

82.     Respondents intentionally and carelessly failed to perform according to the said duties. For instance, Respondents had the duty of loyalty under the fiduciary relationship with Complainant. Respondents breached this duty by failing to disclose material information/facts to Complainant.

83.     Original Creditor is aware of their breach of duty as abovementioned in paragraph 64. Accordingly, Respondents knew or ought to have established the existence of

an adverse claim.

84.     Complainant suffered harm following the breach(es). Complainant suffered a loss equal to the value of the financial asset plus mortgage payments and all proceeds generated from the securitized financial asset. Notably, Complainant's financial asset was stolen, cashed, and then returned to the Complainant in the form of a "loan." Complainant also bears the risk of losing the collateral if Complainant is unable to repay the "loan."

85.     Among other things, Complainant is entitled to damages for the emotional and financial losses and distress caused by Respondents' breaches.

### COUNT VI – UNJUST ENRICHMENT

86.     Complainant incorporates herein Complainant's allegations contained in paragraphs 1 through 85 as though fully set forth herein.

87.     Respondents received benefit(s) from Complainant. Complainant made mortgage payments to Respondents, which payments were received by Respondents.

88.     The benefit conferred upon Respondents were at the expense of Complainant. Accordingly, Complainant had to part with his money to effect the payments.

89.     Respondents have directly or indirectly acquired some personal interest or title in or to the trust property and is profiting from such proceeds and profits out of the trust, whereby said proceeds and profits rightfully belongs to Complainant as abovementioned in paragraph 60.

90.     It is unjust for Respondents to retain the said benefit(s) without commensurate compensation. When making the payments, Complainant was oblivious of the negligent and/or fraudulent conduct of Respondents.

91.     Among other things, Complainant is entitled to damages and any other remedy available at law or equity.

## PRAYERS TO SEAL

THE FACTS CONSIDERED, Complainant prays this Court issues an order to seal this matter from the public.

## PRAYERS RELIEF

THE FACTS CONSIDERED, Complainant prays this Chancery Court for relief involving actual and exemplary damages, and equitable remedies. Such relief would include, but is not limited to, tracing and marshalling all assets; debt extinguishment; settlement and closure of account(s); release and reconveyance of collateral; a full accounting regarding trust property; recoupment of the value of the financial asset, which includes the initial value of the financial asset, the sum of all monthly principal and interest payments, the proceeds from the securitization of the financial asset, the proceeds from any and all payouts from insurance claims plus interest on all monies; payment of any and all taxes, including any and all fees, penalties, and fines, if any, by the Respondents (Fiduciary Trustee(s)); the submission of IRS Forms 4490 and 3949A (*see* Exhibits EE and FF) with a cover letter from the Court, requesting the IRS to immediately open an investigation against Respondents for tax evasion; an injunction[6] against any other cases that could be active or forthcoming relating to this negotiable instrument and the associated real property; a separate Order affirming Complainant's citizenship status as it relates to the incorporated United States; and for any other relief this Chancery Court deems right, just, and appropriate.

Respectfully submitted,

NATHAN J. SYKES
Notary Public - Notary Seal
St Louis County - State of Missouri
Commission Number 15477616
My Commission Expires Jan 25, 2023

Chevalier Howard
2200 N Hwy. 67, #2515
Florissant, MO 63033
Email: master_trustee@protonmail.com

---

[6] "*Pendente lite nihil immovetur* – while a suit is pending no change can be made in the ownership of the property in litigation so as to affect the rights of the parties to the suit." *See* Maxims of Equity: Gibson § 65 (Footnote 8).

**Table of Authorities**

a)   "Equity Jurisprudence" Vol. I-IV 1905 by John Norton Pomeroy.
b)   "Suits in Chancery" 2 nd Edition 1907 by Henry R. Gibson, Tennessee.
c)   "A Treatise on The Law of Trusts And Trustees" Vol. I & II 1889 by Jairus Ware Perry.
d)   "Commentaries on Equity Pleadings, and the Incidents Thereof" 10 th Ed. Vol. I & II, 1892
      by Joseph Story.
e)   "Gilbert Law Summaries: Trusts" 13 th Ed. by Edward C. Hallbach, Jr.
f)   <u>Maxims Of Equity</u>
      1.   Equity sees that as done what ought to be done
      2.   Equity will not suffer a wrong to be without a remedy
      3.   Equity delights in equality
      4.   One who seeks equity must do equity
      5.   Equity aids the vigilant, not those who slumber on their rights
      6.   Equity imputes an intent to fulfill an obligation
      7.   Equity acts in personam
      8.   Equity abhors a forfeiture
      9.   Equity does not require an idle gesture
      10.  He who comes into equity must come with clean hands
      11.  Equity delights to do justice and not by halves
      12.  Equity will take jurisdiction to avoid a multiplicity of suits
      13.  Equity follows the law
      14.  Equity will not aid a volunteer
      15.  Where equities are equal, the law will prevail
      16.  Between equal equities the first in order of time shall prevail
      17.  Equity will not complete an imperfect gift
      18.  Equity will not allow a statute to be used as a cloak for fraud
      19.  Equity will not allow a trust to fail for want of a trustee
      20.  Equity regards the beneficiary as the true owner.

(https://en.wikipedia.org/wiki/Maxims_of_equity)

State of _____Missouri___ )

County of __St. Louis__ )

## **VERIFICATION**

COMES NOW the Complainant, a living man, make oath and affirms that the statements within this document are correct, complete, and true of his own first-hand knowledge, except as to the matters stated herein to be on information and belief, and these matters he also believes to be true.

Respectfully submitted,

Chevalier Howard
2200 N Hwy. 67, #2515
Florissant, MO 63033
Email: master_trustee@protonmail.com

Use of Public Notary is for signature identification and acknowledgment only and does not imply or grant any jurisdiction or traversal into the public venue; the living man who has applied his autograph as his living seal hereinabove has done so in his private capacity and not in any way as an adhesion to unrevealed contracts or compelled benefits. Use of Public Notary is strictly by special, restricted, ministerial visitation with preservation of all Rights and Equitable Interests within the Maxims of Equity and Exclusive to American/English Jurisprudence.

Subscribed and affirmed on this __30th__ day of __April__ 2021, Chevalier Howard proved to me on the basis of satisfactory evidence to be the living man who appeared before me.

Notary Public

My commission expires: _1-25-23_

NATHAN J. SYKES
Notary Public - Notary Seal
St Louis County - State of Missouri
Commission Number 15477616
My Commission Expires Jan 25, 2023

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing is provided by certified mail with postage paid, immediately upon receipt of case number from the Court, to the following recipients:

NewRez, LLC
dba Shellpoint Mortgage Servicing
4000 Chemical Road, Ste. 200
Plymouth Meeting, Pennsylvania 19462

FHCMC-NRZ Amerihome 207840
8200 Jones Branch Road
McLean, Virginia 22102

NewRez, LLC
c/o: CSC-Lawyers Incorporation Service Company
221 Bolivar Street
Jefferson City, Missouri 65101

Catherine Dondvilla
55 Beattie Place, Ste. 110
Greenville, South Carolina 29601

Respectfully submitted,

Chevalier Howard
2200 N Hwy. 67, #2515
Florissant, MO 63033
Email: master_trustee@protonmail.com

State of _____Missouri____)
                          )
County of __St. Louis___)

BEFORE ME personally appeared who, being by me first duly sworn and identified in accordance with Missouri Law, did execute the foregoing in my presence this *30th* day of

*April*, 2021.

_____
Notary Public

My commission expires: *1-25-23*

NATHAN J. SYKES
Notary Public - Notary Seal
St Louis County - State of Missouri
Commission Number 15477616
My Commission Expires Jan 25, 2023